# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAUREL BOUTWELL,

       Plaintiff,

vs.                                                                      No. CIV 07-1103 JB/LFG

SW COMMERCIAL MANAGEMENT, INC.,
d/b/a Foothills Shopping Center, FOOTHILLS OF
ALBUQUERQUE SHOPPING CENTER ASSOCIATES,
COLLIER, HAINES & ASSOCIATES, and SUNWEST
N.O.P., INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendants SW Commercial Management,

Inc. and Sunwest, N.O.P. Inc.'s Motion for Summary Judgment, filed March 27, 2009 (Doc. 62);

(ii) Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Motion to Strike

Affidavit and Report of Walla Engineering, and Motion to Strike Affidavit of Plaintiff Laurel

Boutwell, Attached in Support of Plaintiff's Response to Defendants' Motion for Summary

Judgment, filed May 11, 2009 (Doc. 72)("Motion to Strike"); and (iii) Defendants' Motion to

Reconsider this Court's Anticipated Rulings with Respect to Defendants' Motion for Summary

Judgment, Motion to Strike and First Motion in Limine, Based Upon Plaintiff's Counsel's

Inaccurate Representation to the Court Requesting the Status of Michael Walla, filed June 12, 2009

(Doc. 85)("Motion to Reconsider").  The Court held hearings on June 11, 2009, and July 15, 2009.

The primary issues are: (i) whether the undisputed facts show that Defendants SW Commercial

Management, Inc. and Sunwest, N.O.P., Inc. ("Defendants") are not legally responsible for the

collapse of the roof of a Big Lots store that injured Plaintiff Laurel Boutwell; (ii) whether the Court

should strike a report written by Michael Walla of Walla Engineering, Ltd. addressing the collapse of the roof; and (iii) whether the Court should strike Boutwell's affidavit discussing who would conduct repairs of the roof.  Because the Court concludes that the facts of this case are similar to the situations in which a plaintiff finds an engineering report by an in-house engineer, and do not warrant striking Walla's report or precluding Boutwell from calling Walla as a witness, the Court will not strike the report.  Because the Court does not see a direct contradiction between Boutwell's affidavit and deposition testimony, the Court will also not strike the affidavit.  With the affidavit and the report as part of the record before the Court, there are genuine issues of material fact, and so the Court will deny summary judgment.  The Court will thus deny the Defendants' motion for summary judgment and motion to strike.  The Court will grant the Defendants' motion to reconsider to the limited extent of taking into account the additional facts and argument that the Defendants present, but will ultimately not change its rulings either on the motion for summary judgment or on the motion to strike.

## FACTUAL BACKGROUND

This case is a personal-injury lawsuit involving the collapse of the roof at a Big Lots store in Albuquerque, New Mexico where Boutwell worked.  Boutwell alleges that the roof collapsed during a rainstorm and injured her.  See First Amended Complaint for Personal Injuries ¶ 8, at 2, filed February 4, 2008 (Doc. 3)("Amended Complaint").  According to Boutwell, the collapse was the result of flaws in the construction of the roof.  See Letter from Michael Walla to Jennifer Ashmore at 1-3 (dated August 10, 2006)(Doc. 69-3)("Walla Report").  The Defendants maintain that Big Lots' failure to conduct ordinary maintenance of the roof caused water to pool on the roof and eventually led to the collapse.  See Exhibit 1 to Motion, Affidavit ¶ 3, at 1 (executed March 17, 2009)("Koontz Aff.").

In addition to disputing the cause of the collapse, the parties have differing interpretations whether the Defendants are responsible for the upkeep of the roof.  The sublease between Sunwest, as landlord, and PNS Stores, Inc., which operates the Big Lots store, as tenant, says that Sunwest will perform "[a]ll maintenance and all repairs . . . necessary or appropriate to keep the structure of the store watertight and in good order, condition, and repair," including maintenance of the "roof, including the roof membrane, structure and supports, such that absolute watertight conditions shall be maintained at all times during the Lease Term," and of "[t]he gutters, downspouts and roof drain system."  Sublease § 10.3(a), 10.3(a)(2), 10.3(a)(4), at 35 (Doc. 69-2).  The sublease also states that, after the fifth anniversary from the tenant's rent commencement date, the tenant rather than Sunwest will "perform ordinary maintenance on the roof," but that tenant will not be responsible "for the maintenance or repair of the roof structure." Id. § 10.3(b), at 36.  From the Defendants' view, the sublease makes Big Lots the party responsible for the relevant roof care in this case.  Boutwell asserts that, when roof repairs were needed or when there were drainage issues, Big Lots contacted Sunwest, who would send out roofers to perform any necessary work.  See Affidavit of Laurel Boutwell ¶ 3, at 1 (Doc. 69-4)("Boutwell Aff.").  The Defendants counter that Boutwell has testified, however, that she did not know who was doing work on the roof of the store.  See Deposition of Laurel Yvonne Boutwell at 95:1-96:11 (Doc. 72-2)("Boutwell Depo.").

## PROCEDURAL BACKGROUND

The Defendants move for summary judgment on the sole claim against them, which is for negligence.  The Defendants contend that the collapse of the roof was the result of Big Lots' failure to adequately maintain the roof pursuant to the sublease and thus they do not owe Boutwell any duty that they could have breached.  See Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Memorandum in Support of Motion for Summary Judgment at 4, filed March 27, 2009

(Doc. 63)("MSJ").  To support this proposition, the Defendants cite the expert report of Jim Koontz, which opines that the roof collapsed because of uncleared debris clogging the roof's drainage, which caused water to pool on the roof and ultimately triggered the collapse.  See id.  According to the Defendants, even if they breached a duty to Boutwell to repair prior leaks or replace the roof, any such breach was not the cause of the collapse.  See id. at 4-5.

        Boutwell counters that the Defendants' argument is at odds with their theory in an earlier case stemming from the same incident -- Foothills of Albuquerque Shopping Center Associates vs. Sunwest N.O.P., Inc., Case No. CIV 07-0145 JC/ACT (D.N.M.).  See Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Docket No. 62) at 2, filed April 27, 2009 (Doc. 69)("MSJ Response").  According to Boutwell, the Defendants' expert from that earlier case, Walla, had concluded that the roof collapse was caused by the roof's substandard construction and deficient repairs after an earlier collapse, and Boutwell contends the Defendants are responsible for both the construction and the repair under the sublease.  See id. at 5.  In addition, Boutwell contends that the Defendants were responsible for maintaining the roof under New Mexico law and under the sublease, and that this obligation was never delegated to Big Lots.  See id. at 5-6.

        Boutwell's response prompted the Defendants to move to strike Walla's expert report and Boutwell's affidavit.  Regarding Walla, the Defendants contend that none of the parties have designated, retained, or disclosed Walla as an expert in this case.  See Motion to Strike at 2-4.  With respect to Boutwell's affidavit, the Defendants contend that she does not address the key issues and that her deposition testimony contradicts her assertion of personal knowledge regarding repairs.  See id. at 4-6.  Contemporaneous with the motion to strike, the Defendants filed their reply supporting their motion for summary judgment and contend that, without Walla's report or Boutwell's affidavit, there is no genuine issue of material fact, and that, moreover, New Mexico law does not prevent the

Defendants from delegating their duties pursuant to a sublease.  See  Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Reply in Support of Defendants' Motion for Summary Judgment at 2-4, filed March 27, 2009 (Doc. 62).

In response to the motion to strike, Boutwell contends that Walla's report was part of the Defendants' initial disclosures.  See Response to Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Motion to Strike Affidavit and Report of Walla Engineering, and Motion to Strike Affidavit of Plaintiff Laurel Boutwell, Attached in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket No. 72) at 2, filed May 18, 2009 (Doc. 77)("Response to Motion to Strike").  Boutwell maintains that, because she stated in the Joint Status Report that she may call any witness the Defendants identified, she has given the required notice. See Response to Motion to Strike at 2.  Additionally, Boutwell asserts that there is no inconsistency between her affidavit and her deposition testimony.  See id. at 3.

In reply, the Defendants first contend that their identification of Walla as a prior expert witness does not equal their disclosing their intent to call Walla as a witness.  See Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Reply in Support of Motion to Strike Affidavit and Report of Walla Engineering, and Motion to Strike Affidavit of Plaintiff Laurel Boutwell, Attached in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment at 2, filed June 1, 2009 (Doc. 78).  The Defendants argue that Boutwell was still obligated to identify and disclose Walla as an expert.  See id. at 2-4.  Finally, the Defendants maintain that, despite Boutwell's protests to the contrary, her affidavit and her deposition materially conflict. See id. at 4.

On June 11, 2009, the Court held a hearing on the motion for summary judgment and the motion to strike.  At that hearing, Christian Doherty, counsel for the Defendants, stated that,

although he was not the attorney during the earlier litigation, his understanding of events was that Walla was retained and his report disclosed, but was never deposed and never testified. <u>See</u> Transcript of Hearing at 4:17-5:11(taken June 11, 2009, filed June 30, 2009)(Doc. 88)("June Tr.")(Doherty & Court). Mr. Doherty conceded that if the Defendants were allowed to depose Walla that would mitigate some of the prejudice from Boutwell's reliance on Walla, but maintained that they had complied with the deadlines and that another extension would push back the trial once more. <u>See</u> <u>id.</u> at 10:21-11:8 (Court & Doherty). The Court asked Mr. Doherty whether Walla's investigation might be an admission or a matter for fact testimony that Walla could give, and Mr. Doherty asserted that Walla's only relevance to this case was for his opinions. <u>See</u> <u>id.</u> at 11:13-12:16; 14:21-15:11. Mr. Doherty conceded that his motion for summary judgment was dependent upon the motion to strike. <u>See</u> <u>id.</u> at 35:15-36:1. The Court informed the parties that it was inclined to deny the motions on the grounds that Walla's report was likely analogous to an admission usable against the Defendants. <u>See</u> <u>id.</u> at 40:18-41:6 (Court).

After the hearing, the Defendants filed their motion to reconsider. The Defendants stated that they had erroneously stated that Walla was retained in the earlier litigation. <u>See</u> Motion to Reconsider at 2. According to the Defendants, Walla's report pre-dated the filing of <u>Foothills of Albuquerque Shopping Center Associates vs. Sunwest N.O.P., Inc.</u>, and was never disclosed in that case, and thus the Defendants never ratified that report in a way that would make it an admission. <u>See</u> Motion to Reconsider at 2.

Boutwell responded that the motion to reconsider was, in effect, a surreply in disguise filed in violation of local rules, and that Walla was retained to investigate the collapse and his opinions were reliable testimony which the Court could admit despite not being disclosed under rule 26. <u>See</u> Response to Defendants' Motion to Reconsider this Court's Anticipated Rulings with Respect

to Defendants' Motion for Summary Judgment, Motion to Strike and First Motion in Limine, Based Upon Plaintiff's Counsel's Inaccurate Representation to the Court Requesting the Status of Michael Walla at 1-2, filed June 25, 2009 (Doc. 87).  The Defendants argue in reply that they were not aware that Boutwell was incorrect about Walla having been retained earlier as a rule 26 expert and the Defendants should be allowed to correct the factual error.  See Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Reply in Support of Defendants' Motion to Reconsider this Court's Anticipated Rulings with Respect to Defendants' Motion for Summary Judgment, Motion to Strike and First Motion in Limine, Based Upon Plaintiff's Counsel's Inaccurate Representation to the Court Requesting the Status of Michael Walla at 1-2, filed July 9, 2009 (Doc. 90).  Additionally, the Defendants contend that Boutwell's response misses the point -- that while Walla may have conducted an investigation, Walla was not retained as a rule 26 expert in the earlier case.  See id. at 2-3.

The Court then held a hearing on the motion to reconsider on July 15, 2009.  Mr. Doherty stated that, from what he was able to determine, Walla may have done work on behalf of an insurance company, but was not named by any party in the earlier case as an expert.  See Transcript of Hearing at 5:3-6:17 (Doherty & Court)(taken July 15, 2009)("July Tr.").[1]  Mr. Doherty stated that he believed that Walla's report was produced in this case because it was part of the files regarding the incident that the Defendants had and because he believed it needed to be disclosed.  See id. at 7:15-25 (Doherty).  James P. Lyle, Boutwell's attorney, stated that his investigation turned up that Walla had produced a report for Sunwest, but was not named as an expert by any party, though he was named as a witness by a third-party defendant.  See id. at 12:11-19 (Lyle).  Mr. Lyle contended

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

that Walla should be treated similarly to a treated physician and allowed to testify.  See id. at 13:20-14:14 (Lyle & Court).  The Court informed the parties that, with the new information, it did not appear that the Defendants could be said to have adopted Walla's report, but that Walla may have been an agent acting in the scope of his agency.  See id. at 16:21-17:18 (Court).

## ANALYSIS

Several of the motions pending before the Court are interconnected, and the Court will consolidate those motions in this opinion.  The Defendants' motions for summary judgment, to strike, and for reconsideration all ultimately turn upon whether the Court allows Boutwell to use Walla's report or to call him to testify.  Because the circumstances here are similar to those in which a plaintiff discovers an engineering report in the defendant's files written by one of the defendant's employee engineers, and do not justify precluding Boutwell from relying on Walla, the Court will not strike Walla's report.  Additionally, the Court will not strike Boutwell's affidavit.  With both those documents before the Court, summary judgment, as the Defendants concede, is not appropriate.

## I.    THE COURT WILL NOT STRIKE WALLA'S REPORT.

Before turning to any other issues, the Court will decide whether to allow Boutwell to use Walla's report or to call Walla as a witness at trial.  This issue is the central issue underlying the various motions before the Court in this opinion.  It is also an unusual issue that does not fit neatly within the confines of any particular rule.  Taking guidance from several areas of law, the Court concludes that the most appropriate course here is to allow Boutwell to rely on Walla, but to carefully confine the extent of any testimony at trial.

As a starting point, the Court notes that the evidence Walla could provide and that his report provides are relevant to the issues in this case.  His opinions and observations concern the collapse

that is the primary issue here.  The burden is on the Defendants to demonstrate why the Court should not consider the evidence.

As the Court discussed at the second hearing, the situation is at least somewhat analogous to the situations that rule 801(d)(2)(D) of the Federal Rules of Evidence addresses.  That rule makes "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," not hearsay.  Fed. R. Evid. 801(d)(2)(D).  While the question here is not one of hearsay as such, that evidence rules contemplate allowing, as admissions, out-of-court statements by a party's agents suggests that courts should generally allow such evidence.  And, if the rule applies, it also deprives the Defendants of the ability to argue that Walla's report would be hearsay, although that is not a defense they have raised at this time.

Walla's letter is addressed to Jennifer Ashmore, who is identified in the letter as connected with Sunwest and whom Mr. Lyle represented is a principal of Sunwest.  See Walla Report at 1. Walla writes that "[i]n accordance with our agreement with Sunwest we have completed a structural evaluation of the above referenced structure."  Id.  The "above referenced structure" is the "Big Lots Retail Store Roof Failure, Albuquerque, New Mexico."  Id.  Based upon this language, Walla's report appears to have been conducted at one of the Defendants' request and to be within the scope of their agreement.  Thus, from the record before the Court, rule 801(d)(2)(D) would apply.

One wrinkle in this result might be that Walla would be considered a non-testifying or consulting expert.  "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  Fed. R. Civ. P. 26(b)(4)(B).  It is not clear that Walla, who was retained before the earlier

lawsuit was filed, was necessarily retained in anticipation of litigation, although that is not unlikely. In any event, the information that Boutwell wants to use <u>has</u> been disclosed.  The disclosure has waived any assertion that Walla or his work would be non-discoverable or perhaps protected by the work-product privilege.  The disclosure was not inadvertent, rather the Defendants state they thought it was a required disclosure.  <u>See</u> July Tr. at 7:15-25 (Doherty)(discussing why report was disclosed); <u>Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.</u>, 213 F.R.D. 422, 427 (D. Kan. 2003)(declining to find automatic waiver for inadvertent disclosures); <u>Atari Corp. v. Sega of America</u>, 161 F.R.D. 417, 420 (N.D. Cal. 1994)(holding that voluntary discovery waived rule 26(b)(4)(B) protection).  If the Defendants had not produced the report, then Boutwell's attempt to get the report or to use Walla might violate the Federal Rules of Civil Procedure, <u>see</u> <u>Durflinger v. Artiles</u>, 727 F.2d 888, 891 (10th Cir. 1984)(holding that trial court was justified in excluding the expert that the defendants retained after the plaintiffs retained the expert as a consultant, but declined to call the expert as a witness and did not reveal the substances of his opinions in discovery),[2] but Boutwell is doing nothing more than trying to use what the Defendants have handed her.  Moreover, whatever Walla's status in the earlier litigation, he is not consulting or testifying for the Defendants in this case.[3]

---

[2] It may be that, to form the most informed opinion on the cause of the collapse, the expert should be one that examined the roof shortly after the collapse, which could narrow the field of potential experts to those involved in the earlier litigation.  This possibility could allow for an exception to the rule for "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."  <u>Ager v. Jane C. Stormont Hospital and Training School for Nurses</u>, 622 F.2d 496, 503 (10th Cir. 1980)(internal quotation marks omitted).  Because discovery is not at issue here, the Court need not decide whether report should have been produced or whether Court could have compelled production.

[3] The Court also notes that neither Boutwell nor her attorneys were involved in the earlier case.

The Defendants' chief defense, however, is the more routine defense that Boutwell did not properly disclose Walla to them as an expert under the Federal Rules of Civil Procedure. Rule 26(a)(2)(A) states that "a party must disclose to the other parties the identity of any witness it may use at trial to present" expert evidence. Furthermore, "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then "this disclosure must be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). Boutwell argues that she gave sufficient notice in the Joint Status Report.

In the Joint Status Report, Boutwell identifies as a witness "[a]ny witnesses identified by the Defendants or during discovery." Joint Status Report and Provisional Discovery Plan ¶ 12, at 6, filed September 19, 2008 (Doc. 14). Walla's identity and his report were disclosed to Boutwell during the course of discovery. As a general matter, Walla would thus fall within the scope of this disclosure. It is not clear to the Court, however, whether the materials revealed during discovery would satisfy all the requirements of an expert report under rule 26(a)(2)(B). Boutwell, however, is not retaining Walla, so much as pointing out what Walla has said that is already a part of the record. Boutwell did not ask Walla to undertake any investigation and to offer any opinions. Instead, Walla came to his opinions earlier, at Sunwest's behest, and Boutwell seeks to use those opinions -- which are now historical facts -- that have been disclosed to her. Under this situation, the Court cannot say that Boutwell has failed to comply with rule 26.

The situation is somewhat analogous, as Boutwell contends, to that of a treating physician. Treating physicians are not required to issue expert reports because they are not retained experts, even though they give expert opinions that they form earlier and that are now historical facts. See Watson v. United States, 485 F.3d 1100, 1107 (10th Cir. 2008). On the other hand, treating

-11-

physicians must limit their testimony to opinions and conclusions drawn earlier from prior examination and treatment of their patients.  See Sturgeon v. ABF Freight Systems, Inc., No. CIV 02-1317 JB/WDS, Memorandum Opinion and Order at 3-4, entered January 14, 2004 (Doc. 121)(Browning, J.).  Similarly, Boutwell is not seeking to retain Walla to investigate and offer opinions on the collapse in the manner of a traditional expert, but rather attempting to use Walla's previously prepared report, and call Walla as a witness to testify about what he observed and the conclusions he reached in the past, during his pre-trial investigation.  What Boutwell is seeking to accomplish is analogous to how courts handle the testimony of treating physicians and this similarity is another reason that an expert report is not necessary, as well as a further reason why allowing the testimony and the report are appropriate more generally.

In sum, the Court does not see any sound reason, based on the rules of procedure or evidence, or otherwise, to preclude Boutwell from relying on Walla's report or from calling Walla to testify about his observations and about the conclusions drawn from them.  Like a treating physician, however, Walla's opinion testimony will be limited to those opinions from his earlier investigation into the collapse.  The situation here is similar to a plaintiff finding an internal report from the defendant's file written by the defendant's in-house employee, and while the Court does not see a sound reason to exclude Walla or his report, the Court also believes that Boutwell's adherence to rule 26 was required, and while the Joint Status Report generally described any witnesses whom the Defendants in the upcoming discovery might disclose, the Court believes that the Defendants may have been reasonably surprised at Boutwell's reliance on Walla's earlier report.  Walla has not been deposed, and on the facts of this case, the Court cannot fault the Defendants for that oversight.  If the Defendants wish to depose Walla, the Court will allow it, even though discovery is now closed, and while the Court encourages the parties to resolve this scheduling

without the need for changing deadlines, given the nearness of the trial, the Court may look favorably on continuing the trial if necessary to having Walla deposed before trial.

## II.    THE COURT WILL NOT STRIKE BOUTWELL'S AFFIDAVIT.

The Defendants ask that the Court strike Boutwell's affidavit because it allegedly conflicts with her testimony during her deposition.  The Defendants contend that Boutwell's conflicting testimony is an impermissible attempt to create a phantom or manufactured issue of material fact that precludes the Court from granting summary judgment.  See, e.g., Leon v. Kelly, 2008 WL 5978926 at *2, *4 (D.N.M.)(Browning, J.)(denying request to strike affidavit, because, among other reasons, there was insufficient inconsistency between affidavit and admission).  In her affidavit, Boutwell asserts that, from her experience as an assistant manager at Big Lots, she knew that Big Lots would contact Sunwest, the landlord, who would send "independent roofing repair people who would perform the necessary work on the roof."  Boutwell Aff. ¶ 3, at 1.  At her deposition, however, Boutwell was asked about patching that was done on the roof, and Boutwell stated that, while the workers who did the repairs were not Big Lots employees, she did not remember the name of the company doing repairs, and did not know who hired or paid the workers.  See Boutwell Depo. at 95:17-96:11.  While there is tension between the affidavit and the deposition, the Court does not see the direct contradiction or inconsistency that might justify striking the affidavit.  The tension is more a matter of conflicting inferences than direct inconsistency.  On summary judgment, Boutwell, as the non-moving party, is entitled to have all the reasonable favors drawn in her favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).  The deposition indicates that, on at least one specific incident, Boutwell did not know who hired the workers doing repairs, but her affidavit speaks more generally that, as a matter of course, Big Lots would contact Sunwest, who would send out repair people.  Both statements may be true.  On one occasion, Boutwell may have been unaware

-13-

of who hired workers, while as a general matter, she may know that Big Lots would call Sunwest to have roof work done.  Without a more direct conflict, the Court will not strike the affidavit.

## III.     THE COURT WILL DENY SUMMARY JUDGMENT.

The Defendants concede that their motion for summary judgment cannot succeed if the Court admits Walla's report.  See June Tr. at 35:15-36:1 (Doherty & Court).  Walla's report contradicts Koontz' report regarding the cause of the collapse.  While Koontz asserts that the cause of the collapse was Big Lots' failure to conduct ordinary maintenance of the roof, see Koontz Aff. ¶ 3, at 1, Walla asserts that the collapse was the result of flaws in the construction of the roof, see Walla Report at 1-3.  If Walla was correct, then the Defendants would bear responsibility for the collapse.  Moreover, Boutwell's affidavit creates a genuine issue of material fact about the course of dealing under the sublease regarding which party was responsible for particulars repairs and maintenance on the roof.  See Wheeler Peak, LLC v. L.C.I.2, Inc., 2009 WL 1329115 at *7 (D.N.M.)(Browning, J.)(stating that course of performance may be used in interpreting the terms of a contract under New Mexico law)(citing McNeill v. Rice Engineering and Operating, Inc. ¶ 14, 133 N.M. 804, 808-09, 70 P.3d 794, 798-99 (Ct. App. 2003)).  Given the Defendants' concession and the state of the record, summary judgment is inappropriate.

**IT IS ORDERED** that Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Motion for Summary Judgment is denied; Defendants SW Commercial Management, Inc. and Sunwest, N.O.P. Inc.'s Motion to Strike Affidavit and Report of Walla Engineering, and Motion to Strike Affidavit of Plaintiff Laurel Boutwell, Attached in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment is denied; and Defendants' Motion to Reconsider this Court's Anticipated Rulings with Respect to Defendants' Motion for Summary Judgment, Motion to Strike and First Motion in Limine, Based Upon Plaintiff's Counsel's Inaccurate Representation

to the Court Requesting the Status of Michael Walla is granted to the extent that the Court will take

the Defendants' additional arguments into account, but is otherwise denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

James P. Lyle
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Bruce McDonald
Christian C. Doherty
Law Offices of Bruce S. McDonald
Albuquerque, New Mexico

     *Attorneys for Defendants SW Commercial Management, Inc.*
       *and Sunwest, N.O.P., Inc.*

Ben M. Allen
Jacob A. Garrison
Hatch, Allen & Shepherd
Albuquerque, New Mexico

     *Attorneys for Defendants Collier, Haines and Associates and*
       *Foothills of Albuquerque Shopping Center Associates*